UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

IRENE ELEY,

          Plaintiff,

v.                                                            No. 2:14cv398

FOOD LION, LLC,

          Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Food Lion, LLC ("Food Lion")'s Motion for Summary Judgment. (ECF No. 12). Plaintiff Irene Eley ("Eley") alleges that she slipped and fell on a liquid on the floor of an aisle in Food Lion's Store #1629 in Norfolk. Food Lion argues that it lacked notice, constructive or actual, of the allegedly defective condition prior to Eley's fall. Eley argues that a genuine issue remains as to notice, which she intends to prove "by relying on the fact that an agent of the defendant should have observed the dangerous condition at the time of the accident." Pl.'s Br. (ECF No. 14, at 4). Upon the materials in the record, viewed in the light most favorable to Eley, the Court concludes that there is no genuine dispute as to any material fact and that Food Lion is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). Eley has failed to produce any evidence from which a reasonable juror could conclude Food Lion had notice of the alleged defect. Accordingly, for the reasons set forth in greater detail below, the Court GRANTS Food Lion's Motion for Summary Judgment.[1]

---

[1] Food Lion has also moved in limine to exclude expert testimony from Eley's witnesses based on failures in discovery under the Federal Rules, (ECF No. 19), and requested oral argument, (ECF No. 21). Because this Order resolves Eley's claims entirely, Food Lion's motions are DISMISSED as MOOT.

1

## I. SUMMARY OF UNDISPUTED MATERIAL FACTS

On July 4, 2012, Eley travelled with her cousin to Food Lion store #1629 in Norfolk and arrived between 2:00 PM and 4:00 PM. After travelling around the store and collecting items she intended to purchase, she and her cousin proceeded to the front of the store in order to pay for the collected items. Eley then realized that she had forgotten to get an item, hushpuppy mix. She then directed her cousin to stand in a checkout line, while she went to retrieve the hushpuppy mix. Eley walked down aisle 5, grabbed the hushpuppy mix off the shelf, and then began walking back down aisle 5 toward the front of the store. While travelling down the aisle, she slipped and fell forward onto the floor. Eley alleges that she then saw a clear unidentified liquid on the floor, which was discolored from dirt on her shoe. Eley cannot identify the liquid, when the liquid became present on the floor, or how the liquid came to be present on the floor. See Dep. of Irene Eley (ECF No. 13-1, at 53-85).

One Food Lion employee, Augusta Welch who worked as a stocker or "scan analyst," witnessed Eley's fall. According to Ms. Welch, "[i]t just looked like [Eley] collapsed to the ground and fell forward." Dep. of Augusta Welch (ECF No. 17, at 8). Ms. Welch was hanging new price tags on aisle 5 when Eley "buckled over." Id. at 9, 10. As Ms. Welch worked her way down aisle 5, she did not see anything on the floor because "if there was something on the ground [she] would have noticed." Id. at 10. She testified: "I'm looking at the ground as I'm walking and paying attention to what's around me." Id. Regarding aisle 5 immediately after Eley's fall, Ms. Welch asserted that "[t]here was nothing on the floor to my recollection." Id. at 16. Ms. Welch immediately went over to Eley after her fall and directed an another employee, who walked by the aisle, to notify the store manager on duty and the security officer. Id. at 11.

The store manager that day, James Bowman, came to aisle 5 soon after the fall. Dep. of James Bowman (ECF No. 16, at 21). Mr. Bowman observed Eley "laying on the floor" and saying that she was in pain. Id. Mr. Bowman testified that he observed nothing on the floor, other than Eley. Id. Mr. Bowman stated: "I can tell you there was nothing on the floor because I've done this for thirty years and that would be the first thing I would look for if there was something." Id. at 23. Eventually, paramedics transported Eley to DePaul Medical Center, where she was discharged. Eley Dep. (ECF No. 13-1, at 86).

## II. DISCUSSION

### A. The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure requires the Court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586-87 (1986). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." Anderson, 477 U.S. at 252. Rather, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks omitted).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### B. Eley Has Failed to Produce Sufficient Evidence to Support Constructive Notice

Eley has alleged one count of simple negligence. It is her burden at trial to prove that Food Lion owed her a duty, breached that duty, and by such breach, proximately caused her injury. Colonial Stores Inc. v. Pulley, 125 S.E.2d 188, 190 (Va. 1962).[2] The materials in the record establish that Eley was an invitee upon Food Lion's premises. As such, Food Lion owed her a duty to exercise ordinary care.

> In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to her, but was, or should have been, known to the defendant.

Colonial Stores Inc., 125 S.E.2d at 190. Here, Eley relies on the second theory listed above – that Food Lion had a duty "to remove, within a reasonable time, foreign objects from its floors . .

---

[2] When federal courts sit in diversity, state law provides the rules of decision. See 28 U.S.C. § 1652; see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

4

. which it knew, or should have known, that other persons placed there." Id. (emphasis added). To establish a prima facie case for premises liability on that theory, "the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises . . . ." Grim v. Rahe, Inc., 434 S.E.2d 888, 889 (Va. 1993).

When there is no evidence of actual knowledge, constructive knowledge "may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." Id. at 890 (citing Colonial Stores, 125 S.E.2d at 190). The constructive notice inquiry in Virginia "focuses on whether knowledge of a specific unsafe condition may be imputed" to an owner. Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 454 (4th Cir. 2004) (citing Grim, 434 S.E.2d at 890); see also Cerquera v. Supervalue, Inc., 715 F. Supp. 2d 682, 686 (E.D. Va. 2010) ("Under Virginia law, the owner of premises is not an insurer of his invitee's safety."). When, as here, the plaintiff relies on constructive knowledge, "if the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a prima facie case." Cerquera, 715 F. Supp. 2d at 685 (citing Grim, 434 S.E.2d at 888) (emphasis added). "It is the responsibility of the Plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess and random judgment, she cannot recover." Id. (citing Lawson v. John Doe, 391 S.E.2d 333, 335 (Va. 1990)). Eley cannot recover.

Eley has failed to present evidence sufficient for a rational trier of fact to conclude that Food Lion had constructive notice of the alleged liquid on the floor. Again, to hold Food Lion liable, Eley needs to present sufficient evidence for a jury to conclude that a dangerous condition had existed for a sufficient period of time that Food Lion, using reasonable and ordinary care, should have discovered of the existence of the dangerous condition. See Roll 'R' Way Rinks,

Inc. v. Smith, 237 S.E.2d 157, 161 (Va. 1977). In the context of the Rule 56 summary judgment standard, Food Lion has cited clear Virginia premises liability law and has offered Eley's deposition testimony, to meet its burden of showing that the evidence is insufficient to create a genuine dispute as to a material fact of the nonmoving party's claim – Eley is unable to prove how long the alleged liquid was present on the floor in order to charge Food Lion with constructive notice of its existence. See Matsushita Elec. Indus. Co., 475 U.S. at 586-87. With that, the burden shifted to Eley to present specific facts demonstrating that there is a genuine issue for trial. Id. In her effort to do so, Eley relies on testimony from two Food Lion employees, a stocker and store manager. But, this evidence is insufficient to create a genuine issue. Eley is unable to articulate, or present circumstantial evidence to suggest, when the alleged liquid first appeared on the floor. Instead, she relies on several facts and arguments that otherwise fall short of establishing a "scintilla of evidence" on the critical issue of notice. Anderson, 477 U.S. at 252.

Eley first points out that Ms. Welch, the stocker, was present on aisle 5, hanging new price tags on the shelves. See Dep. of Augustus Welch (ECF No. 17, at 10). Ms. Welch testified that she had inspected, or at least seen, the floor of aisle 5 because she was "up and down the aisle hanging tags and if there was something on the ground [she] would have noticed. [She was] looking at the ground as [she was] walking and paying attention to what's around [her]." Id. Eley further cites to the fact that the last recorded cleaning or sweeping of aisle 5, before Eley's fall, occurred around 11:00 AM. Pl.'s Br. (ECF No. 14, at 7) (citing Dep. of James Bowman (ECF No. 16, at 24)). From there, Eley argues that "a store employee had just inspected the aisle and was still in the aisle with Ms. Eley when she fell. Yet, the employee failed to identify and correct or warn Ms. Eley of the dangerous condition present on the floor." Pl.'s Br. (ECF No.

14, at 7). Ergo, "had Welch properly inspected the aisle she would have discovered the dangerous condition." Id. (emphasis in original).

Construing the facts in the light most favorable to her, Eley still glosses over her failure to establish when the alleged liquid appeared on the aisle floor. That is, Eley assumes, without offering evidence to allow a rational trier of fact to infer, that the liquid was "present on the floor" when Ms. Welch conducted her allegedly improper inspection of aisle 5. Id. (emphasis added). Virginia law requires temporal evidence of the dangerous condition's existence in order to hold a landowner liable on a theory of constructive notice. See, e.g., Winn-Dixie Stores, Inc. v. Parker, 396 S.E.2d 649, 651 (Va. 1990). Otherwise, the rational trier of fact cannot infer that the defendant should have known of its existence by ordinary care. "[I]f the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a prima facie case." Grim, 434 S.E.2d at 890 (emphasis in original); see also Hodge, 360 F.3d at 454 (citing same). Eley testified, "no," she did not know "where the liquid that [she] allege[s] that [she] fell in came from." Dep. of Irene Eley (ECF No. 13-1, at 84-85). And, she testified "no," she did not know how the long the liquid had been on the floor prior to her fall. Id. at 85. Similarly, Ms. Welch, the stocker, has offered no testimony that she saw anything on the floor of aisle 5 before or after Eley's fall.[3] See Dep. of Augusta Welch (ECF No. 17, at 9-18). In fact, Ms. Welch testified that "there was nothing on the floor to my recollection," and that she did not "observe any substance on the floor at all." Id. at 16. In short, Eley has offered no evidence that can establish how long the alleged liquid was present on the floor.

In Winn-Dixie, the court rejected the same logic and argument Eley advances here. In Winn-Dixie, the plaintiff sought to hold the grocery store liable for negligence after slipping and

---

[3] The store manager, Mr. Bowman did not inspect the aisle immediately before Eley's fall, but testified: "I saw nothing on the ground on that aisle," when he arrived after the fall. Dep. of James Bowman (ECF No. 16, at 24).

7

falling on a snap bean in the produce section. Id. at 650. The plaintiff fell less than two minutes after a store employee dry-mopped the area. Id. In attempting to uphold a jury verdict in his favor, the plaintiff argued that it would be unreasonable to require an injured customer to establish exactly how items of food get on the floor, and "the fact remains that, '[f]or whatever reason,' the bean 'did end up on Winn-Dixie's floor,' creating 'a dangerous and hazardous condition' which Winn-Dixie knew or should have known about, thus placing upon Winn-Dixie the duty to remove the dangerous object." Id. at 651. The plaintiff argued that the jury "could reasonably infer [the employee] was negligent in dry-mopping the floor, since it was obvious he missed the snap bean." Id. The court held that the plaintiff had failed to make out a prima facie case of negligence:

> There is no evidence in this case that [Winn-Dixie] knew of the presence of the [bean] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed on the floor an instant before [the plaintiff] struck it as it is to infer that it had been there long enough that [Winn-Dixie] should, in the exercise of reasonable care, have known about it.

Id. (quoting Colonial Stores Inc. v. Pulley, 125 S.E.2d 188, 190 (Va. 1962)). "Nor could the jury have inferred that [the employee] must have missed the bean simply because it was present on the floor when [the plaintiff] fell. To countenance such an inference would ignore the likelihood that the bean found its way to the spot where [the plaintiff] fell as the result of some action taken by another customer after [the employee] finished mopping the produce section." Id.

Similarly here, it is equally logical to assume that the alleged liquid appeared on the floor shortly before Eley fell, as it is to assume that it appeared some time before Ms. Welch worked her way down that section of aisle 5 hanging price tags, or some time before the cleaning employee swept the aisle more than three hours prior, or any other length of time sufficient to charge Food Lion with constructive notice. There is simply no evidence from which a rational

trier of fact could infer that Food Lion had constructive notice. Compared to the facts in Winn-Dixie, it is even less likely that Ms. Welch's allegedly negligent "inspection" of aisle 5 overlooked the alleged liquid than it is that the employee missed the snap bean when he mopped only two minutes prior. The existence of gap in time alone, between the "inspection" by Ms. Welch and Eley's fall, renders Eley's evidence insufficient to show that the liquid was present long enough, such that Food Lion should have known of it. But, with a longer gap there are even more points in time in which the liquid may have appeared, such that Ms. Welch did not negligently overlook the alleged hazard during her earlier work on aisle 5.

Simultaneously cutting against Eley's theory of negligent inspection by Ms. Welch is the fact that Eley slipped and fell as she returned back down the same aisle that she had just walked down. See Dep. of Irene Eley (ECF No. 13-1, at 63-64). Eley left the checkout area at the front of the store, walked down aisle 5, retrieved hushpuppy mix, returned back down aisle 5 towards the front of the store, walked "straight forward in the middle of the aisle," and then slipped and fell. Id. (ECF No. 13-1, at 64). Thus, Eley traversed the area of the alleged liquid with no trouble, seconds prior to her fall that injured her. Her argument – based on Ms. Welch's allegedly improper inspection – assumes that the liquid existed during both of Eley's trips down aisle 5. However, she has offered no evidence to support that position. Even viewing the facts in a light most favorable to her, Eley's evidence is not sufficient to allow a rational trier of fact to infer constructive notice based on the materials in the record. Her theory of the case relies on too little evidence and too much speculation. And, "[g]enuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." Banvick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984).

For additional support, Eley cites Memco Stores, Inc. v. Yeatman, 348 S.E.2d 228, 232 (Va. 1986) and Miracle Mart, Inc. v. Webb, 137 S.E.2d 887, 890 (Va. 1964). Those cases do not help her. In Memco, a woman slipped on a peperomia plant leaf. 348 S.E.2d at 229. The court held that a property owner can be charged with constructive notice "[i]f an ordinarily prudent person, given the facts and circumstances [the owner] knew or should have known, could have foreseen the risk of danger resulting from such circumstances." Id. at 231. That is, the owner "had a duty to exercise reasonable care to avoid the genesis of the danger." Id. Specifically, the jury could have found that as "a merchandiser of peperomia plants," Memco should have known that changing the plant's location "would cause such a succulent plant to shed moist leaves; that Memco positioned the plant on the furniture display in such a manner that the leaves could and did fall in the aisle; [and] that Memco should have foreseen that this would create a risk of harm to customers using the aisle . . . ." Id. Because Eley has offered no evidence that Ms. Welch or Food Lion was the "genesis of the danger," Memco is inapposite to Eley's arguments on summary judgment. There is no additional fact that Food Lion allegedly should have known, such as the characteristics of peperomia plants, that could give rise to its constructive knowledge of the unidentified liquid, which allegedly caused Eley's fall. Therefore, Memco does nothing to establish why Food Lion should be found negligent.

In Miracle Mart, the court upheld a jury verdict for the plaintiff where she "slipped in what she described as a substance that looked 'kind of like coca-cola," while she walked directly behind the store's assistant manager. 137 S.E.2d at 889. The manager was showing her merchandise and "completely blocked her view." Id. The court held: "[i]n this instance the jury had a right to conclude that had the assistant manager of the department been keeping a proper lookout he could have seen this dangerous substance in time to warn the customer of its

presence." Id. at 890. That is, the "defendant, through its assistant manager, deliberately injected itself between [the plaintiff] and a danger which was open and obvious to the assistant manager had he been looking." Id. As in Memco, the defendant was the genesis of the danger because the danger was an obstructed view of an open and obvious condition. Here, there is no suggestion, or evidence, that Food Lion took any affirmative action to "deliberately inject[]" itself or otherwise create a dangerous condition. Id. Food Lion did not place the liquid on the floor. Eley's "improper inspection" theory is one of negligence by omission, not affirmative misfeasance. And, Virginia law "distinguishes between cases where a plaintiff alleges negligence from a defendant's 'affirmative conduct,' and cases where a plaintiff alleges negligence from a defendant's 'passive conduct.'" Jefferson v. Regal Cinemas, Inc., No. 3:10cv166, 2010 WL 3894127, at *5 (E.D. Va. Oct. 4, 2010) (citing Ashby v. Faison & Assocs., Inc., 440 S.E.2d 603, 605 (Va. 1994)). The former is a "genesis of the danger" theory of liability, while the latter is one of constructive notice. Eley's argument is an unsuccessful attempt to transform Miracle Mart's "proper lookout" negligence into a source of strict liability for the entire surface area of Food Lion's store. It remains, however, that her argument does not identify sufficient evidence in the record to allow a rational trier of fact to find the essential element of notice, whether actual or constructive.

Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322-23 (citing Fed. R. Civ. P. 56(c)). Here, Eley has proffered no evidence to identify when this alleged hazard occurred. In fact, she has produced no evidence at all of how the hazard occurred, or even what the clear liquid was. Without more, no rational trier of fact can infer, based on the materials in

11

the record, that Food Lion had constructive knowledge of the presence of any clear liquid on the floor in aisle 5. As such, there is no <u>genuine</u> issue as to that material fact, and Rule 56(a) requires that the Court grant summary judgment in Food Lion's favor.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Food Lion's Motion for Summary Judgment (ECF No. 12) and the Clerk is DIRECTED to enter judgment in favor of Food Lion.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
February 25, 2015